The Chief Justice

delivered the Opinion of the Court.
Whilst three several executions of fieri facias were in the hands of the sheriff of Shelby county, against the estate of John F. Willet—Joseph Roney took a mortgage on a house and lot and other property of Willet in the same county.
After the date of the mortgage, those executions were levied on the said house and lot, which were afterwards sold by the sheriff, under the levy, for $121 more than the aggregate amount of all the executions; for which excess a bond was given by the purchaser to Willet.
Roney then filed a bill in chancery against Willet and Bell and others, asserting an equitable right to the amount of the sale bond to Willet—alleging that Bell & Co. held the bond as assignees of Willet, and praying that the payment of it to any other person than himself, might be enjoined.
The Circuit Court having sustained a demurrer, and thereupon dismissed the bill; that decree, now to be revised, should, in our opinion, be affirmed.
Though the executions, from the instant when they came to the sheriff’s hands, operated as a legal lien on the house and lot, and may, therefore, have authorized the sheriff’s sale of them, notwithstanding the intermediate mortgage—yet, as that conveyance passed to Roney the legal title, subject only to the prior lien, to the extent of the executions—had only so much of the house and lot been sold, as was necessary for satisfying those executions, his right (as mortgagee) to the portion remaining unsold, would have been unincumbered and undoubted; and consequently, as the entire house and lot were sold for more *4 than the total amount of the executions, he might have been equitably entitled to the excess for which the bond was given by the purchaser to the mortgagor, instead of the mortgagee.
If the mortgage includes property which is also included in an elder mortgage—the bill must show that the later is a subsisting incumbrance, and the property insufficient for both debts; and the elder mortgagee must be a party: the omission of these allegations, will be ground of demurrer; for without them, the assignee of the sale bond will not be deprived of its benefit.
The holder of the legal title will not be compelled to make any discovery, to enable a stranger to the bond, in such case, to avail himself of an equitable right to it, without an allegation that the former is not a trustee for the assignor, or otherwise not a bona fide assignee for a valuable consideration, without notice: no such presumption, not alleged, will be indulged.
The registration of the mortgage is not a notice that can affect the assignee of the bond—who claims no interest in the property mortgaged.
It does not appear that the property, as sold, was conveniently devisable, so as to have enabled the sheriff to have made the whole amount of the executions by a sale of less than the whole of it, and have left unsold any portion of it of substantial value to the mortgagee, nor that the sale as made, was not authorized by the parties concerned; and therefore, as the bill seems to acquiesce in the sale as valid, we should presume that it was so.
The only question to be now considered, therefore is, whether the bill, which seems to ratifiy the sale, exhibits such a case as should require answers.
Whatever might have been Roney’s equitable right, as between himself and Willet and the obligors in the bond for one hundred and twenty one dollars, that equity should pot prevail against bona fide assignees for a valuable consideration and without notice; because Willet's legal title, as obligee, was vendible, and his assignment passed that title to the assignees, subject only to any rights, legal or equitable, between the parties to the bond and not subject to any extraneous and latent equity in a stranger.
Moreover, the equity now asserted, is that of a mortgagee; and, if available, it could not be made so without seeking a foreclosure of the mortgage, and making all necessary parties for that end.
Then, it seems to us, that there are two radical defects in the bill, either of which would be fatal to it.
1. The bill neither seeks a foreclosure of the mortgage as to the other property contained in it, nor alleges that this unsold property is insufficient for securing the ends of the mortgage. It suggests only that a prior mortgage to one William Willet covered the remaining property; and does not allege, either that the prior incumbrance is subsisting and available, or to what extent, or that the property may not be sufficient for satisfying both mortgages; nor does the bill propose to make the prior incumbrancer a party, or to require a foreclosure and sale under his mortgage.
*5 Before a court of equity would take from the assignees the amount of the bond, it would require the complainant to show conclusively, that he could not otherwise be indemnified to the extent of his mortgage, and this could be done only by bringing the prior mortgagee before the court, disposing of his alleged incumbrance, and subjecting all the mortgaged property to sale, In this important particular, therefore, the bill is fatally defective, even if in other respects it had been sufficient.
2. But it is, in our judgment, insufficient in a more radical point. It does not intimate that the assignees, either held the bond in trust for the assignor, or were volunteers, or had notice of the equity now claimed by the complainant.
Without some such allegations, a court of equity will not compel the holder of the legal title to answer and make discovery, for the purpose of enforcing against them an outstanding equity in favor of a stranger to the assigned bond.
We will not, without allegation, presume that there was no valuable consideration for the assignment, or that the assignees hold the bond in trust for the assignor, or that, at the time of the assignment, they had actual notice of the equity now asserted.
Nor was the registration of the morgage constructive notice to them, of any such consequential and contingent equity in a stranger to the bond.
As purchasers of the bond, the assignees were required to ascertain only that the recited consideration, to wit, the sale of the house and lot, was valid; they were neither required, nor should be presumed, to know that a stranger held an equitable interest in a portion of the price for which the property was lawfully and effectually sold as the estate of the judgment debtor whose, and whose alone, it was, for all the legitimate purposes for which it was sold—if, as is now admitted, it was legally sold. So far as the right of the assignees is concerned, or may be affected, and so far as the house and lot were liable to be sold under the executions, the registration of the mortgage should not be deemed counstructive notice to them, either of an incumbrance on property in which *6 they claim no interest, or of any equitable lien resulting therefrom on the consideration of the bond. They could not be required to know that a stranger held a mortgage posterior to the legal lien of the judgment creditors, and therefore, should not be presumed to have known any such fact, of the existence of which the registry was not constructive notice, either to the creditors holding a prior lien, or to the assignees of the bond for a portion of the price.
It seems to us, therefore, that the bill does not exhibit a good claim to any relief; and therefore, the decree of the circuit court (which may not bar a new suit presenting an essentially different aspect,) must be affirmed.